Estate of Samuel H. Straus, Deceased, Corinne S. Shott, Executrix v. Commissioner.
Estate of Samuel H. Straus, Deceased v. Commissioner
Docket No. 16305.
United States Tax Court
1949 Tax Ct. Memo LEXIS 197; 8 T.C.M. (CCH) 442; T.C.M. (RIA) 49109; May 6, 1949
*197 Frank E. Wood, Sr., Esq., and Frank E. Wood, Jr., Esq., both of Traction Bldg., Cincinnati, Ohio, for the petitioner. Walter W. Kerr, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in estate tax of $11,383.59 against the Estate of Samuel H. Straus. [1] Only part of this deficiency is contested by petitioner. By amended answer, respondent has sought to increase the deficiency from $11,383.59 to $12,204.35, and the adjustment causing the increase is conceded by petitioner. The sole issue presented is the value of decedent's interest at the time of his death in a partnership business - a retail cigar store located in Cincinnati, Ohio. More narrowly put, the question is whether or not there existed any good will in the business; and, if such did exist, its value, there being no apparent disagreement as to the value of the tangibles to be used. [2]
Findings of Fact
*198 Decedent died testate a resident of Cincinnati, Ohio, on December 19, 1944. His only daughter, Corinne S. Shott, is executrix under his last will and testament. The estate tax return was filed with the collector for the first district of Ohio. At the date of his death, decedent was the owner of an 8/15 interest in a partnership business which was engaged generally in the retail sale of tobacco products and smoking accessories. The business was conducted under the name of "Straus Bros. & Co.", the other partner being decedent's brother, Nathan, who owned the remaining 7/15 interest. This partnership was the continuation of a business commenced by decedent and his brother in about 1903, and which, until 1938, was carried on under an oral agreement of the partners. On July 5, 1938, the partners reduced their oral agreement to writing, and provision was incorporated for disposition of the interests of a deceased partner. The significant terms of the agreement, in this respect, were that if decedent were to predecease his brother, as actually happened here, decedent's daughter was given the right to purchase her uncle's interest at book value, without allowance for any good will, *199 within nine months after his death. In the event that this option was unexercised by her, then decedent's brother was accorded the opportunity to purchase decedent's interest at book value, without any allowance for good will, during a period of one month after the expiration of the original nine-month period. If neither exercised such option, then the business was to be disposed of "as an entirety and going concern, taking into consideration, under such circumstances, the good-will which has been built up over the long period of years." From its inception, the business has always been located on the ground floor of the Mercantile Library Building, Cincinnati, a large office building in the very heart of the city's business district, and one of the finest locations in the city for a tobacco store. The partnership leased the premises, such leases generally running for a period of two years, as this was the term the partners desired. The lease in effect at the time of decedent's death expired on May 31, 1946. If the partners had at any time requested, it would have been possible for them to obtain leases on the premises for longer terms, as the owner of the building was not averse *200 to such leases and had, in fact, entered into them with other tenants of the building for terms as long as 25 years. Except for a brief excursion into the wholesale trade, many years ago, the partnership confined itself to the retail sale of tobacco, cigars, cigarettes, pipes, and other related items. The partnership, at all times, enjoyed a fine reputation in the community. For a number of years, the partnership marketed its own brand of pipe tobacco under the trade name of "Straus' Private Stock." The mixture was manufactured by the American Tobacco Co., which alone has knowledge of the formula. The partnership at no time held any contract with the tobacco company for the continued production of this private brand. It is an unusual mixture, a popular brand, and, in addition to store sales, the partnership carried on a brisk mail order business on this item. The name and wrapping of this private brand were not copyrighted nor trade-marked. Efforts had been made to obtain such a copyright and trade-mark, but without success. The partnership did not enjoy the exclusive use of the "Straus" name in the city. Throughout Cincinnati, there have been operated retail cigar stores under *201 the name of "Henry Straus Company", which company has engaged in the wholesale and retail tobacco business in that city since 1880, and is a well-known organization there. There was no family relationship between the family which controlled the Henry Straus Co. and the members of Straus Bros. & Co. During his lifetime, decedent had always been the moving force in the operation and management of the partnership business. His brother had been in ill health for some time and performed only a minimum of the duties and accepted but little of the responsibility of the enterprise. In addition to decedent, three long-time employees, each of whom attracted certain clientele to the store, performed the main functions of retail selling. Their terms of service, up to the time of decedent's death, ranged from 11 to 22 years, but none was under contract to the partnership for any fixed period of employment. During the war years, the earnings of the business increased substantially as a result of conditions related to the war economy, such as greater demand for its products and demand for higher-priced merchandise. The net income of the partnership for each of the years 1933 to 1944 was as *202 follows: 1933
$ 9,670.91
1934
14,939.40
1935
not available
1936
18,812.58
1937
18,021.12
1938
16,645.22
1939
15,141.85
1940
17,390.93
1941
19,178.88
1942
25,984.55
1943
29,449.48
1944
49,338.56 These figures make no allowance for partners' compensation, the reasonable value of which averaged $12,000 per annum. The total invested capital in thebusiness at the end of each of the years 1940 to 1944 was as follows: 1940
$ 89,099.13
1941
93,928.90
1942
109,910.74
1943
109,903.64
1944
135,210.36
The invested capital was excessive for a business of this size and type, this being reflected in excessive cash and Government bondholdings which were not needed in the operation of the business or the earning of income. Less than two weeks after decedent's death, there was withdrawn from the business $65,000, leaving invested therein about $70,000. In the estate tax return, decedent's interest in the business was valued at $70,152.88. Respondent has determined the value to be $107,265, utilizing average earnings for the five-year period preceding decedent's death, the figure $50,000 for working capital, an 8 per cent return *203 on it, and a capitalization of excess earnings at 15 per cent. His computation is, as follows: Partnership Interest
of Samuel H. Straus
Computation of Value at
December 19, 1944
Average earnings, 5 years * * *
$ 28,268.00
Loss: Partners' compensa-
tion
$12,000.00
Return on working
capital $50,000.00
at 8% * * *
4,000.00
16,000.00
Excess earnings
$ 12,268.00
Capitalized at 15% (goodwill)
81,787.00
Decedent's interest in good-
will, 8/15
$ 43,619.00
Decedent's interest in tangi-
bles, per balance sheet
63,646.00
Total
$107,265.00
The fair market value of the good will of the partnership, at the time of, and immediately after, decedent's death, was $18,000, of which decedent's interest at that time was 8/15ths. Opinion KERN, Judge: We are convinced that a goodwill value attached to the business carried on by the partnership composed of decedent and his brother, and that goodwill existed at the time of, and immediately after, the decedent's death. See . The amount of the fair market value of that goodwill as of the date of decedent's death has been determined *204 by us, as set forth in our findings of fact, after a careful consideration of all the facts of record, the contentions of the parties at the hearing and upon brief, and all of the factors and criteria pertinent to and helpful in the resolution of a question, as to the difficulties of which a graphic description has been given in . Our findings of fact are dispositive of the only contested issue. Decision will be entered under Rule 50. Footnotes
1. Samuel H. Straus will hereinafter be referred to as decedent.↩
2. As will subsequently appear, respondent utilized the sum of $63,646 to reflect "Decedent's interest in tangibles, per balance sheet"; petitioner does not question this.↩